# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DARYL H.,[1] | : | Case No.  2:22-cv-3139 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Daryl H. brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), and the administrative record (Doc. #8).

## I.   Background

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.  *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on April 17, 2020, alleging

disability due to depression, anxiety, anger problems, and a heart condition. (Doc. #8-6, *PageID*

#399). After Plaintiff's applications were denied initially and upon reconsideration, he requested

and received a hearing before Administrative Law Judge (ALJ) Deborah F. Sanders. Thereafter,

the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social

Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] The ALJ reached the following main

conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since December 13, 2019, his alleged onset date. |
| Step 2: | He has the following severe impairments: congenital heart disease, major depressive disorder, intermittent explosive disorder, panic disorder, and alcohol dependence. |
| Step 3: | He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work… except he is limited to routine tasks that do not require a fast production rate pace or strict production quotas; occasional interaction with co-workers, supervisors and the general public on a superficial basis, such as no tandem or shared tasks with coworkers or collaborative work, and no requirement to persuade others or resolve conflicts, no over-the-shoulder supervision and no work in a customer service capacity; and [Plaintiff] can sustain routine tasks in a relatively static setting where changes can be explained in advance." |

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

|  | Plaintiff is unable to perform his past relevant work. |
|---|---|
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. |

(Doc. #8-2, *PageID* #s 117-24).  Based on these findings, the ALJ concluded that Plaintiff has

not been disabled since December 13, 2019.  *Id.* at 124-25.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #8-2,

*PageID* #s 115-25), Plaintiff's Statement of Errors (Doc. #10), and the Commissioner's

Memorandum in Opposition (Doc. #12).  To the extent that additional facts are relevant, they will

be summarized in the discussion section below.

## II.    <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported

by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r*

*of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th

Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial

evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more

than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may

result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision

of the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

III.     <u>Discussion</u>

Plaintiff argues that the ALJ failed to properly evaluate the medical source opinions provided by his treating nurse practitioner, Sharon Lyon-Paul, CNP, and mental health therapist, Kathryn Chapman, LSW. (Doc. #10, *PageID* #s 1133-42). Further, Plaintiff asserts that the ALJ improperly limited him in her residual functional capacity (RFC) assessment. *Id.* at 1142-45. The Commissioner maintains that the ALJ properly evaluated the medical opinions and substantial evidence supports her RFC assessment. (Doc. #12, *PageID* #s 1151-59).

A.     **Opinions**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527. Because Plaintiff's claim for disability was filed in April 2020, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard.  20 C.F.R. § 404.1520c.  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …."  § 404.1520c(a).  Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding."  § 404.1520c(c).  Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors.  § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be."  § 404.1520c(c)(1).  Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...."  § 404.1520c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning."  *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021).  At bottom, the new regulations "set

forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

In this case, Plaintiff alleges that ALJ Sanders erred in evaluating the assessment from Ms. Lyon-Paul, Plaintiff's treating nurse practitioner. In December 2020, Ms. Lyon-Paul opined that Plaintiff was "seriously limited" in his abilities to sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday or work week without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; interact appropriately with the general public; and maintain socially appropriate behavior. (Doc. #8-8, *PageID* #s 1052-53). Additionally, Ms Lyon-Paul indicated that Plaintiff was both "severely limited" and "unable to meet competitive standards" in his abilities to maintain attention for a two-hour segment; maintain regular attendance, and be punctual within customary, usually strict tolerances; accept instructions and respond appropriately to criticism from supervisors; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; and deal with stress of semiskilled and skilled work. *Id.* Ms. Lyon-Paul explained that Plaintiff has "significant problems with attention, distraction, irritability, impulsiveness, … and defensiveness." *Id.* at 1052. She opined that Plaintiff's impairments or treatment would cause him to be absent from work more than four days per month. *Id.* at 1053.

6

ALJ Sanders did not find Ms. Lyon-Paul's opinion to be persuasive.  (Doc. #8-2, *PageID* #122).  In support of this conclusion, ALJ Sanders gave two reasons.  First, she found that Ms. Lyon-Paul's opinion was inconsistent with her own treatment notes.  *Id.* at 122-23.  ALJ Sanders explained that Ms. Lyon-Paul's notes documented "largely unremarkable mental status examinations and good response and improvement with medication management."  *Id.*  Second, ALJ Sanders found Ms. Lyon-Paul's opinions were not consistent with the evidence as a whole, which demonstrates that Plaintiff is able to carry out activities of daily living and regularly care for his children, without significant difficulty.  *Id.* at 123.

Plaintiff also alleges that ALJ Sanders erred in evaluating the opinion of his therapist, Ms. Chapman.  (Doc. #10, *PageID* #s 1138-42).  Ms. Chapman completed her medical opinion on Plaintiff's ability to do work-related activities on May 14, 2021.  (Doc. #8-8, *PageID* #s 1121-22).  She noted that Plaintiff has intermittent explosive disorder, panic disorder, high anxiety, moderate major depressive disorder, recurrent disorder, unspecified personality disorder, and antisocial and borderline traits.  *Id.* at 1122.  Ms. Chapman opined that Plaintiff was "seriously limited" in his abilities to understand and remember detailed instructions and travel to unfamiliar places.  *Id.*  She also opined that Plaintiff is "unable to meet competitive standards" in several categories including, for example, his abilities to understand, remember, and carry out very short and simple instructions; maintain attention for a two-hour segment; perform at a consistent pace without an unreasonable number and length of rest periods; and be aware of normal hazards and take appropriate precautions.  *Id.* at 1121.  Ms. Chapman further found Plaintiff had "no useful ability to function" in several categories including, for example, the ability to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without

special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; set realistic goals or make plans independently of others; interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. *Id.* at 1121-22. Ms. Chapman noted that Plaintiff "doesn't deal with stress easily frustrated, slow to understand/remember detailed instruction[s], doesn't like to follow orders, no goals [and] make plans independently of others." *Id.* at 1122.

In reviewing Ms. Chapman's opinion, ALJ Sanders found that it was "not persuasive." (Doc. #8-2, *PageID* #123). ALJ Sanders provided two reasons. She first found that Ms. Chapman's opinion was not supported by her own treatment records, "which show that while [Plaintiff] lacks motivation and at times, appears irritable, he is also bright with a sense of humor, happy, and talkative." *Id.* Second, ALJ Sanders concluded that Ms. Chapman's opined limitations are not consistent with the record. *Id.* She explained that the record shows that Plaintiff's mental health symptoms are generally stable with medication and that he is capable of activities of daily living. *Id.*

Plaintiff asserts that in evaluating Ms. Lyon-Paul's and Ms. Chapman's opinions, the ALJ mentioned supportability and consistency but only in a broad sense, and she failed to cite any exhibits that supported her reasons. (Doc. #10, *PageID* #s 1136, 1139). With respect to Ms. Lyon-Paul's opinion, Plaintiff argues, "the ALJ's determination of the opinions and findings was not an accurate representation of the record." *Id.* at 1136. Plaintiff notes that Ms. Lyon-Paul's treatment notes consistently document issues with anxiety, fear, anger, irritability, a short temper, impulse

8

control, triggers, and moodiness.  *Id.* (citations omitted).  Turning to Ms. Chapman's opinion, Plaintiff contends that "the ALJ looked at the record with a very narrow view.  The ALJ focused on the evidence concerning [Plaintiff's] personality." *Id.* at 1139.  Further, although the ALJ found that Plaintiff's mental health symptoms stabilized with medication, the record shows that he was admitted to the hospital with suicidal and homicidal ideation with an antidepressant overdose.  *Id.* at 1140 (citing 944-45).  Finally, concerning the ALJ's evaluation of both opinions, Plaintiff contends that the record shows that he is not able to perform any daily tasks without help or needing to be reminded.  *Id.* at 1137-41.

The ALJ's explanations for finding Ms. Lyon-Paul's opinion and Ms. Chapman's opinion unpersuasive are clearly articulated and supported by substantial evidence.  Although Plaintiff is correct that the ALJ did not specifically cite any exhibits when evaluating their opinions, the ALJ addressed Plaintiff's mental impairments with citations to the record earlier in her decision when assessing the "paragraph B" criteria at step three and when discussing Plaintiff's mental health treatment history at step four.  (Doc. #8-2, *PageID* #s 119, 121); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole).  Specifically, the ALJ discussed Plaintiff's treatment records from Allwell Behavioral Health Services (where both Ms. Lyon-Paul and Ms. Chapman treated Plaintiff).  For example, the ALJ observed that treatment records from Allwell Behavioral Health Services show Plaintiff's "mental status examinations are routinely unremarkable, indicating normal speech, clear and linear thought processes, intact judgment, appropriate language and fund of knowledge and normal attention span and concentration."  (Doc. #8-2, *PageID* #119) (citations omitted); *see e.g.,* Doc. #8-7, *PageID* #s 546, 557, 568, 579, 590-91, 636-37, 648-49, 681-82, 696-97.  The ALJ recognized

that those treatment records show that Plaintiff appeared irritable and moody at times, but he generally presented at calm and cooperative.  (Doc. #8-2, *PageID* #119) (citations omitted).  Indeed, Ms. Lyon Paul consistently noted that Plaintiff was "calm and cooperative" and occasionally indicated that he "smiles easily." (Doc. #8-7, *PageID* #s 546, 557, 567-68, 578, 590).  The ALJ further observed that treatment records show that Plaintiff "often reported that he was doing 'ok', but expressed irritability and frustration in response to external stressors such as family illness, financial concerns, his children's behavior and interpersonal issues with neighbors and siblings." *Id.* at 121 (citations omitted).  The ALJ pointed to Ms. Lyon-Paul's treatment note from September 2020 indicating that Plaintiff's mood swings are "externally triggered." (Doc. #8-2, *PageID* #119) (citing Doc. #8-7, *PageID* #676).

The ALJ also discussed Plaintiff's good response and improvement with medication earlier in her decision.  (Doc. #8-2, *PageID* #s 119, 121).  For instance, Plaintiff reported good response to medication to both Ms. Chapman and Ms. Lyon-Paul on several occasions.  *Id.* (citing Doc. #8-7, *PageID* #s 656, 676, 709; Doc. #8-8, *PageID* #s 1067, 1079).  In one of the notes cited by the ALJ from September 2020, Ms. Lyon-Paul noted that Plaintiff has "[s]ome depression but still feels like meds help." (Doc. #8-7, *PageID* #676).  In November 2020, Ms. Lyon-Paul noted that there were no changes to his medication at his last appointment, and Plaintiff "[o]verall feels like they work well." *Id.* at 709.  Further, the ALJ also found that "periods of increased irritability tend to correlate to times when [Plaintiff] was out of medication or had missed his dose." (Doc. #8-2, *PageID* #121) (citing Doc. #8-7, *PageID* #602; Doc. #8-8, *PageID* #1067).  For example, on January 29, 2020, Ms. Chapman noted that Plaintiff "is irritated because he missed his Zoloft last night." (Doc. #8-7, *PageID* #602).  In addition, although Plaintiff reported to Ms. Lyon-Paul that

10

he was feeling more irritable lately, he also indicated that he ran out of medication a few days before and "[w]hen he had them they were helping." (Doc. #8-8, *PageID* #1067).

Similarly, the ALJ discussed some of Plaintiff's daily activities earlier in her decision. For example, the ALJ recognized that Plaintiff testified that he drives at least once per day. (Doc. #8-2, *PageID* #119). When asked where he drives to, Plaintiff explained that he is usually taking his kids to see a doctor or going to the grocery store. *Id.* at 180. Plaintiff also testified that on a typical day, he wakes up, helps with breakfast for his children, tries to do something like watch the kids play outside, and sleeps. *Id.* at 194. He also sees his friend, who is also his neighbor, every day. *Id.* at 194-95. Additionally, the ALJ observed that Plaintiff indicated in a function report that he is able to pay bills and count change but has difficulty managing money. *Id.* (citing Doc. #8-3, *PageID* #s 404-11). Also, Plaintiff reported that he engages in hobbies, including playing video games and building/taking things apart. *Id.* In that function report, Plaintiff also described what he does every day: "wake up[,] drink coffee[,] help fix breakfast. Help clean the house as needed. Take care of my children as needed. [E]at dinner, help go to sleep, wake up, repeat." (Doc. #8-6, *PageID* #405). Plaintiff checked the box indicating that he has no problem with personal care but noted that he needs reminders to take a bath or shower. *Id.* at 405-06. He also needs reminded to take his medication. *Id.* at 406.

The undersigned finds that the ALJ's discussion of Ms. Lyon-Paul's opinion and Ms. Chapman's opinion satisfied the articulation requirements of § 404.1520c and substantial evidence supports that ALJ's reasons for finding their opinions unpersuasive. Although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in

11

the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir. 2008) (The Court "'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.'") (quoting *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)).

### B. Residual Functional Capacity

Plaintiff also asserts that the ALJ improperly limited Plaintiff in her RFC. Specifically, Plaintiff argues that the ALJ erred in arbitrarily defining the term "superficial" in her RFC without explaining how she arrived at that definition. (Doc. #10, *PageID* #s 1142-44).

An individual's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"); 20 C.F.R. § 404.1546(c) (if the claimant's case is at the ALJ hearing level, the ALJ is responsible for assessing his RFC); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The ALJ's RFC assessment must be based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a). Further substantial evidence must support the ALJ's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.).

In formulating Plaintiff's RFC, ALJ Sanders considered the medical opinion evidence of record and found the opinions of the state agency consulting psychologists, Lisa Foulk, Psy.D.,

and Jennifer Swain, Ph.D., to be persuasive.  (Doc. #8-2, *PageID* #122).  Dr. Foulk, who reviewed

Plaintiff's claim at the initial level, opined that Plaintiff could perform routine tasks with no fast

pace or high production rates.  (Doc. #8-3, *PageID* #240).  Further, Plaintiff "is capable of tasks

[with] superficial and occasional contact [with] the general public, co[-]workers, and supervisors."

*Id.*  On reconsideration, Dr. Swain generally agreed with Dr. Foulk's assessment.  *Id.* at 249-50.

However, she found that Plaintiff is able to perform routine tasks with no fast pace or high

production rates and *limited social distractions*.  *Id.* at 249.  Further, she found that Plaintiff has

adaptation limitations.  *Id.* at 250.  She noted that Plaintiff has "[r]educed stress tolerance but [is]

able to sustain routine tasks in a relatively static setting where changes can be previewed prior to

implementation."  *Id*.

The ALJ found Dr. Foulk and Dr. Swain's opinions to be persuasive because they "are

consistent with the overall evidence of record, which documents [Plaintiff's] history of mental

health treatment for issues with anger, depression and anxiety, but also reflect relatively

unremarkable mental health status examinations, good response to medication and general stability

of [Plaintiff's] mental health symptoms aside from mood changes linked to external stressors."

(Doc. #8-2, *PageID* #122).

Plaintiff does not challenge the ALJ's assessment of Dr. Foulk and Dr. Swain's opinions.

Instead, he asserts that the ALJ erred by defining the term "superficial" when Dr. Foulk and Dr.

Swain did not and by failing to explain how she reached that definition.  (Doc. #10, *PageID* #1142-

45).

The undersigned finds that the ALJ did not define the term "superficial" in her RFC

assessment.  Instead, the ALJ gave examples of what she meant by "superficial basis."

Specifically, the ALJ limited Plaintiff to "occasional interaction with co-workers, supervisors and the general public on a superficial basis, *such as* no tandem or shared tasks with coworkers or collaborative work, and no requirement to persuade others or resolve conflicts, no over-the-shoulder supervision and no work in a customer service capacity …."  (Doc. #8-2, *PageID* #120) (emphasis added); *see Such As, Merriam-Webster.com,* https://www.merriam-webster.com/dictionary/such%20as (last accessed Sept. 25, 2023) (defining "such as" as an idiom "used to introduce an example or series of examples.").  Thus, Plaintiff's argument that the ALJ erred in defining the term "superficial" lacks merit.

Nonetheless, Plaintiff is correct that, unlike the ALJ, Dr. Foulk and Dr. Swain did not include any examples of what they meant by "superficial" in their opinions.  However, the ALJ is not required to adopt a medical opinion verbatim.  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").  Here, although Plaintiff contends that the ALJ's inclusion of such examples render the RFC "materially different" from Dr. Foulk and Dr. Swain's opinion, Plaintiff fails to explain how they are different.  Specifically, Plaintiff does not identify any limitations that are contemplated by Dr. Foulk and Dr. Swain's opinions but were ignored or omitted by the ALJ.

The undersigned finds that the ALJ's RFC is consistent with Dr. Foulk and Dr. Swain's opinions.  In evaluating Plaintiff's social interaction limitation, Dr. Foulk opined that Plaintiff was moderately limited in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism with supervisors.  (Doc. #8-3, *PageID* #240).

14

Dr. Swain agreed and also opined that Plaintiff was moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id.* at 249. The ALJ's examples account for these moderate limitations.

Furthermore, as noted by the Commissioner, the ALJ discussed some of the evidence related to Plaintiff's ability to interact with others in the workplace in her decision.  (Doc. #8-2, *PageID* #s 119, 121); (Doc. #12, *PageID* #1156).  For example, at step three, the ALJ found that Plaintiff is moderately limited in his ability to interact with others.  (Doc. #8-2, *PageID* #118).  In support, the ALJ explained that, during a consultative examination, Plaintiff "exhibited pleasant affect and appropriate mood although he expressed irritation in general."  *Id.* at 119 (citing Doc. #8-7, *PageID* #s 618-29).  Further, the ALJ observed that the record shows that, although Plaintiff appears irritable and moody at times, he generally presents as calm and cooperative.  *Id.* (citations omitted).  In addition, the ALJ acknowledged that Plaintiff testified that he has a difficult time holding his anger in and that his anger has gotten worse.  *Id.*  He also reported that he has anxiety in public places.  *Id.*  At step four, the ALJ noted that Plaintiff's most recent employment records show that he worked well with co-workers and management, and there is no evidence that Plaintiff had problems with anger at work or had altercations with other employees.  *Id.* at 121.  Together, this evidence supports the ALJ's assessment of Plaintiff's mental limitations.

In sum, the ALJ did adopt Dr. Foulk and Dr. Swain's opinion that Plaintiff should be limited to superficial and occasion interaction with co-workers, supervisors, and the general public. However, the ALJ added examples to explain what she meant by "superficial."  These examples are consistent with Dr. Foulk and Dr. Swain's opinion and are supported by substantial evidence.

Based on the foregoing, Plaintiff's Statement of Errors is not well taken.

**IT IS THEREFORE ORDERED THAT:**

1.      Plaintiff's Statement of Errors (Doc. #10) is **OVERRULED;**

2.      The Commissioner's non-disability determination is **AFFIRMED**; and

3.      The case is terminated on the docket of this Court.


September 27, 2023                              *s/Peter B. Silvain, Jr.*
                                                Peter B. Silvain, Jr.
                                                United States Magistrate Judge

16